JOSEPH BOLTER *et al.*

*v.*

ANTHONY KOZLOWSKI *et al.*

*Opinion filed June 23, 1904—Rehearing denied October 13, 1904.*

1. MECHANICS' LIENS—*time for the completion of work must be fixed.*
A mechanic's lien cannot be allowed under written contract which
provides for partial payments as the work progresses and the bal-
ance on completion, but fails to fix a time for such completion.

2. EQUITY—*when chancellor may hear evidence not given before master.*
Upon objection at the hearing that the master's report has been
altered after it left his hands, the chancellor may hear evidence
upon that question without violating the rule against considering
evidence on the hearing that was not before the master.

3. SAME—*court may investigate alleged alteration of its records without
a written motion or pleading.* The report of the master in chancery
is a record of the court, and the court may investigate an alleged
alteration thereof and correct the same without a written motion
or other pleading as the basis for its action.

4. MASTERS IN CHANCERY—*master cannot grant leave to withdraw
papers.* The master in chancery is a ministerial officer, and has
no power to grant leave to withdraw an original contract given in
evidence before him and to file a copy in lieu thereof.

*Bolter* v. *Kozlowski*, 112 Ill. App. 13, affirmed.

APPEAL from the Branch Appellate Court for the First
District;—heard in that court on appeal from the Supe-
rior Court of Cook county; the Hon. AXEL CHYTRAUS,
Judge, presiding.

C. P. ABBEY, and ELMER H. ADAMS, for appellants.

GORDON A. RAMSAY, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the
court:

Appellants, who compose the firms of Bolter Bros. &
Co. and K. Hirsch & Co. filed their intervening petitions
for mechanics' liens in a suit begun to establish such a
lien by Napoleon Provost, one of the appellees, against
Anthony Kozlowski, an appellee, and others claiming

liens upon the premises involved in the suit. There was a reference to a master in chancery, who took and reported the evidence to the court, with his findings that said firms were each entitled to a lien. Exceptions to the report of the master were sustained by the court and the petitions were dismissed for want of equity. The Appellate Court for the First District affirmed the decree and appellants prosecuted their appeals to this court.

In 1899 Bishop Anthony Kozlowski was engaged in building a hospital in the city of Chicago, and entered into separate written contracts, under seal, with appellants' firms to furnish materials and do work in the construction of the building. The defense to the claims for liens was, that neither contract fixed a time for the completion of the same or for final payment. They were both on printed forms providing for payments of eighty-five per cent as the work progressed and the balance upon completion of the contract, and in each there were blanks left for the time for completion, which were not filled. No lien is allowed by the statute under such a contract. *Freeman* v. *Rinaker*, 185 Ill. 172.

The contract with K. Hirsch & Co. was dated August 22, 1889, and the time for completion was left blank. It is contended by counsel for said firm that before commencing work on the contract there was a verbal understanding between them and the owner fixing the time for performance. There was no consideration for any new contract, and we need not consider the question whether the executory contract under seal could be changed or the omission supplied by a verbal agreement, since the evidence does not show that there was such an agreement. There was evidence that before the work was commenced one of the firm had a conversation with Bishop Kozlowski, in which the bishop said he hoped the work would be done on the whole hospital in the year 1900; that it would be completed by the middle of the year; that he wanted to have the whole thing completed; that the

member of the firm said in reply that his part could be done, and that the bishop said, well, it would be done,— he hoped everything would be done. There was neither a requirement by the bishop that the work should be done by a specified time nor a proposal to finish the work by such time which was accepted by him. No reference was made to the contract and there was no intention to add to it a new condition. The statement of the bishop was only that he hoped the work would be done, and the reply was, not an agreement that it should be done by the time mentioned, but only that it could be done. In its most favorable light for the contractor, the evidence did not prove a contract between the parties to complete the work by the middle of the year 1900. It was right to dismiss the petition of K. Hirsch & Co.

In the case of Bolter Bros. & Co., when the cause came on to be heard on exceptions to the master's report it was found that in the transcript of the evidence the blanks in the typewritten contract offered in evidence and transcribed by the master's stenographer had been filled by inserting "1st" in the first blank space and "May" in the second, with a pen, making the contract read that the work was to be completed on or before the first day of May next, and the contract was dated June 7, 1899. Just above said copy of the contract where it was recited that the same was offered in evidence, the words "Leave given to withdraw same and file copy" had also been written with a pen. The defendant claimed that these were false and fraudulent interpolations, but the point was raised orally,—not by a petition or other pleading. The court investigated the charge, and called as witnesses the master in chancery, the stenographer who wrote the evidence, and· one of the firm who testified before the master. It was then proved that the contract offered in evidence contained blanks for the time of completion, and neither the stenographer, the master nor any one in his office wrote the words with which the

blanks were filled or the words "Leave given to withdraw same and file copy," and none of those words were in the transcript when it left the hands of the stenographer. The master did not know of the unauthorized interpolations until shortly before the hearing by the court on the exceptions to his report. He did not recollect, as a matter of fact, that he had attempted to give permission to withdraw the original contract and substitute a copy. The master delivered the report to the solicitor for the complainant on November 19, 1901, and it was filed in court on February 3, 1902. The master did not know when or by whom the alteration was made. The court found and recited in its decree that after the testimony was taken before the master there were inserted in the copy of the contract, by some unauthorized persons, the words above mentioned, which were never inserted in or a part of the original contract, and they were expunged and disregarded. The argument in behalf of Bolter Bros. & Co. in this court is, that the court erred in its investigation and in rulings on evidence, and that the petitioner was entitled to have the cause heard upon the master's report as it appeared, without expunging the interpolations.

It is first argued that no objection to the evidence was interposed before the master or preserved by objection to his report, and that therefore all objection to the contract as it appeared in the transcript was waived. When the contract was offered in evidence before the master it did not contain the words afterward interpolated, but showed, on its face, that petitioners were not entitled to a lien, and there was no reason for objecting to it. It is somewhat absurd to say that defendant ought to have objected to the contract on account of something that was not in it, and that by failing to do so he waived an objection to a subsequent fraudulent alteration.

It is next argued that the court erred in receiving evidence in open court concerning the change in the tran-

script, because the case should have been considered only upon the master's report and the testimony returned by him. Where a cause is referred to a master in chancery to take and report the evidence, with his conclusions, it is not competent on the hearing of the cause for the court to hear or consider evidence that was not before the master. (*Cox* v. *Pierce*, 120 Ill. 556.) That rule was not violated or disregarded in this case. In making the investigation the court was not hearing and determining the cause, but heard evidence to determine what unauthorized alteration had been made in the transcript of the evidence. The question was not what the rights of the parties were upon the evidence actually introduced, but whether the records of the court had been tampered with.

It is also argued that the court had no right to act upon the oral objection or suggestion of a fraudulent alteration. The master's report was a record of the court, and courts have power to protect their records from fraudulent alteration without being moved thereto by anybody and without any motion or pleading. The records of a court are the history of its proceedings, and all courts are invested with inherent power to correct their records and make them reveal the truth. It was within the power of the court to make the record conform to what was actually done. (*Church* v. *English*, 81 Ill. 442; *Steele* v. *Steele*, 89 id. 51; *May* v. *People*, 92 id. 343.) Courts not only have power to make their records speak the truth, but the power extends to restoring papers which have been improperly altered or defaced and the substitution of new ones where the originals have been purloined or destroyed. (17 Ency. of Pl. & Pr. 914.) It would be strange doctrine that a court has no right to hear testimony to disclose fraud and unauthorized interference with its records by inserting therein evidence not offered or orders not made, unless there should be a written motion or some sort of pleading as a basis for the court's action.

A paper purporting to be a copy of the contract, and marked "Exhibit A," was attached to the report, in which there were no blanks. It is contended that the petitioner was entitled to the benefit of this exhibit as a copy filed after the withdrawal of the original. There was no evidence that it was a copy or where it came from. The supposed leave to withdraw the original and substitute a copy was fraudulently inserted in the transcript, and even if the master had given the authority he had no power to do so. The master is merely a ministerial officer, and cannot grant leave to make a copy evidence in place of the original. Leave to withdraw a paper can only be granted by the court having authority and jurisdiction over its records, and it should not be granted until the case has been heard and the instrument has fulfilled its purpose. Wherever this "Exhibit A" came from, the evidence is clear that the contract offered in evidence and transcribed by the stenographer did not fix any time for the completion of the work. One of the firm testified, on the investigation, that there were two copies of the contract, and that one of them contained blanks while the other contained dates. If the original contract fixed a time for the completion of the contract, it was the duty of the petitioner to produce it and offer it in evidence. The original contract offered before the master was not produced on the hearing, and the master testified that it was not before him when he made his report.

There was no evidence which in law authorized a lien, and the court was right in dismissing the petition.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Note by the Reporter.—The attorneys appearing for appellants in this court in the above cause are not the same who conducted the proceeding before the master commented upon in the opinion.