FEDERAL NATIONAL BANK OF BOSTON *vs.* WILLIAM A. GASTON, executor, & another.

WILLIAM A. GASTON *vs.* FEDERAL NATIONAL BANK OF BOSTON.

Suffolk. March 23, 1926. — June 28, 1926.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Land Court*, Jurisdiction, Petition to register mortgage, Lost certificate. *Mortgage*, Of real estate: registered land, priority, merger. *Merger*.

The Land Court has jurisdiction to hear and determine a petition by a mortgagee of registered land for registration of his mortgage, where it appears that registration has been refused by the assistant recorder to the petitioner, who, in seeking registration, did not present the owner's duplicate certificate of registered title, the petitioner alleging in his petition, as a reason for his failure to present that certificate, that it could not be found.

The Land Court has jurisdiction to hear and determine a petition for registration of a mortgage of registered land where the duplicate certificate of registered title cannot be found and the petitioner alleges that

"by mistake" he did not present his mortgage for registration at a time when he knew where that certificate was.

If, at the hearing in the Land Court of a petition for registration of a mortgage of registered land, it appears that, on the same day that the mortgage was given, the mortgagor conveyed the locus to the mortgagee, the petitioner, in fee and a new certificate of registered title was issued under G. L. c. 185, § 64; that four months later the petitioner reconveyed the land to the former owner, who took out a new certificate and on the same day gave a mortgage of the land to a third party, and that there was no note of the petitioner's mortgage on any certificate of title, the judge of the Land Court well might find a merger extinguishing the petitioner's mortgage title, and a ruling was warranted that the petitioner had no present interest in the locus by virtue of his mortgage or otherwise.

Loss or inability to find an owner's duplicate certificate of registered title to real estate, so that a mortgagee is prevented from presenting it under G. L. c. 185, § 68, with his mortgage for registration, is a "reasonable ground" under § 114 for the allowance of a petition for amendment and alteration of the certificate by the registration of the mortgage.

A mortgagee of registered real estate, who received his mortgage during the lifetime of the mortgagor, is entitled, after the death of the mortgagor and when his owner's duplicate certificate of registered title cannot be found, to maintain a petition for the registration of his mortgage as a security having priority over the interests of the heirs and devisees of the mortgagor and the creditors of his estate.

PETITION, filed in the Land Court on February 18, 1924, by Federal National Bank of Boston, successor to Federal Trust Company, seeking registration of a mortgage, in part of registered land of Henry P. Nawn, given by him to the trust company on February 14, 1921, which the assistant recorder had been unable to register because Nawn was unable at the time of the giving of the mortgage or subsequently to find his owner's duplicate certificate of registered title.    Also a

PETITION, filed in the Land Court on February 27, 1924, by William A. Gaston seeking registration of a mortgage of registered land given him by Henry P. Nawn on December 16, 1919, which the petitioner alleged had "by mistake" not previously been registered.

William A. Gaston was admitted as a party respondent to the first petition on the ground that his mortgage, described in the second petition, antedated that described in the first, and that the mortgagee in the mortgage described in the first petition had notice thereof.    As executor of the

will of Henry P. Nawn, Mr. Gaston opposed the first petition, alleging that it appeared "likely, if not certain," that the personal property of the estate would not be sufficient to pay creditors and that resort would be had to the real estate, including that described in the first petition, and that it did not "appear to have been determined in the courts of this Commonwealth whether or not persons holding common law mortgages of registered land, which they have failed to have registered in accordance with the general laws of the Land Court before the death of the mortgagor, are entitled thereafter to have said mortgages registered and a prior lien thereby established against the rights and interests of judgment creditors."

The petitions were heard together by *Smith*, J. Material facts found by the judge are stated in the opinion. The judge ruled (1) that the court had jurisdiction of the petitions and power to order or decree registration of the mortgages; (2) that the petitioner Gaston had no present interest in the locus by virtue of his mortgage or otherwise; (3) that the rights of creditors of the estate and the interests of the heirs and devisees were subject and junior to the right of the bank under its mortgage; and (4) that the petitioner bank was entitled to a decree registering its mortgage as a security having priority over the interests of the heirs and devisees of Nawn and the creditors of his estate. The first petition was ordered allowed and the second was dismissed. The cases then were reported to this court for determination.

*A. A. Gillette*, for William A. Gaston, individually and as executor.

*F. W. Falvey*, for Federal National Bank of Boston.

WAIT, J. This case comes before us upon a report from the Land Court made pursuant to G. L. c. 185, § 15.

Both the bank and the Gaston petitions seek registration of mortgages of registered land in the absence of the duplicate certificate of the mortgagor.

The Land Court has jurisdiction to entertain and to pass upon them. G. L. c. 185, § 1, makes it a court of record with jurisdiction to hear and determine all questions arising upon petitions for the registration of title to land and ease-

ments or rights in land held and possessed in fee simple. Jurisdiction to hear and determine exists even if, as a result of the hearing, the court must decide that it is without power to grant the remedy sought, or to pass finally upon the subject matter.

Henry P. Nawn, the mortgagor, at his death was the registered owner of the locus, and William A. Gaston, as one of the executors of his will, contends that the Land Court is without jurisdiction to deal with the subject matter because by G. L. c. 185, § 57, although an owner may mortgage registered land as if it were not registered and may use any form of mortgage sufficient in law for the purpose, no such conveyance can take effect as a conveyance or bind the land, but "shall operate only as a contract between the parties." Hence, he urges, the petitioners' rights are in a court of equity to compel the performance of an undertaking to furnish valid mortgage security, and not in the Land Court to obtain registration of the incomplete mortgage. His argument disregards a portion of § 57 which gives a further operation to the instrument, "and as evidence of authority to the recorder or assistant recorder to make registration." The recorder and assistant recorder are officers of the Land Court performing duties for it. Their acts in so doing must be subject to the direction of the court. It must have jurisdiction to decide whether those acts are valid; and whether an instrument presented requires or does not require them to act. It is not without jurisdiction to determine the effect as conveyances of the instruments used by them even though a court of equity be the court to decide the rights of the parties between themselves. *Woodvine* v. *Dean*, 194 Mass. 40. G. L. c. 185, § 60, provides for a decision by the court if the assistant register is in doubt upon any question, or if any party in interest does not agree as to the proper memorandum to be made. It is manifest that a refusal to register an instrument based upon a failure to present with it the owner's duplicate certificate under G. L. c. 185, § 62, must be a matter for action by the Land Court. That section expressly excepts action based "upon the order of the court."

The statute, § 67, requires registration in order that title

may pass and the land be affected by a mortgage; and, furthermore, by § 68, prescribes that the owner's duplicate certificate shall be presented to the assistant recorder with the mortgage deed. Both petitioners are driven to the court by their failure so to present the owner's duplicate.

In the Gaston petition, the failure to present the owner's duplicate certificate when the mortgage deed, which also contained parcels of unregistered land, was left for record, is alleged to be due to mistake. The mortgagor on the same day that the mortgage was made also conveyed the registered locus to the mortgagee in fee and a new certificate was issued to the latter pursuant to the statute, § 64. This indicates that the owner's then duplicate certificate was in Mr. Gaston's control; for otherwise he could not have secured a new certificate. There would have been an incongruity in having the mortgage entered on the old certificate (§ 68), and then taking a new certificate in fee with the annotation of an outstanding mortgage to the same owner bearing the same date. A merger would have resulted at once. There was, probably, no mistake, in any usual meaning of the word, in failing so to proceed. On April 12, 1920, Mr. Gaston reconveyed the locus to the mortgagor, who took out a new certificate (§ 68) and on the same day gave a mortgage on the locus to the Union Institution for Savings which was duly noted on Nawn's new certificate. No notation of a mortgage to Mr. Gaston appeared on any certificate of the title. On these facts the Land Court well might find a merger which extinguished any title to this locus in Mr. Gaston. We do not see any estoppel which would prevent him from asserting a right under a mortgage or a contract for a mortgage, subject to intervening rights of *bona fide* mortgagees, such as the Union Institution for Savings, seems to have been; but we can see nothing which prevented a merger of the mortgage right in the fee while he held it. Whether the right under the unregistered conveyance was an estate or merely rested in contract, nothing appears from the evidence to keep the two rights apart. If once they merged, no new life could arise in the mortgage when subsequent events made that mortgage interest desirable. The Land Court was

right in dismissing the Gaston petition, and it is not necessary to discuss the interesting questions on other points raised thereunder.

The bank's petition sets out as a reason for the failure to present the owner's duplicate certificate with the mortgage deed, that it could not be found. It is admitted that the owner was unable to find it; and that since his death diligent search has failed to discover it. Mr. Gaston, as one of the executors of the will of the mortgagor, contends that the registration act, G. L. c. 185, gives no such remedy by petition to the Land Court. He contends that, since a mortgagee may refuse to loan until the duplicate certificate is produced, the law makers must be taken to have regarded that power as a sufficient protection; and that, in the absence of specific provision in the act for such a contingency, the language of §§ 112 and 114 should not be stretched to cover it. The Land Court did not agree with this contention. Nor do we. The statute, § 111, provides for the issue of a new certificate if a duplicate certificate is lost or destroyed; and in § 97 it provides for the issue of a new certificate and duplicate to heirs or devisees on the death of the registered owner. No action has been taken under either of these sections, and we need not consider whether either would have furnished a remedy for the bank. We need not consider whether the petition can be sustained as an "adverse claim" under § 112, see *Lamson* v. *Coulson*, 234 Mass. 288; for § 114, which deals with "amendment and alteration of certificates of title," is broad enough to authorize the course here pursued. After enumerating various circumstances under which an alteration or amendment of a certificate may be permitted by the Land Court, § 114 authorizes such amendment or alteration "upon any other reasonable ground." The failure to present the duplicate certificate under circumstances such as are disclosed here is among the "reasonable grounds" upon which the court may permit the amendment of the certificate. Such amendment cannot affect the title or interest of any purchaser who in fact holds the duplicate certificate for value and in good faith unless he consents in writing. If the lost duplicate certificate is

ever found, the entry authorized by the present decree cannot affect the title there disclosed, provided the holder has given value for it in good faith and withholds his written consent.   The evidence justifies a finding that there is no such holder for value and in good faith.

The bank concedes that its mortgage must be subject to the three mortgages made by Nawn in 1920 which are noted on the certificate on file in the Suffolk registry of deeds.   It claims that it is prior to the rights of Nawn's heirs and devisees and of creditors of his estate.   This claim the executors contest.

When Nawn died the legal title was in him as against the bank, G. L. c. 185, § 57; but he had authorized the mortgagee and its assigns to have the mortgage registered, and he could be compelled to produce his duplicate certificate to enable the registration to be made.   In equity he held the title as a trustee for his mortgagee and its assigns.

It remains to consider whether a petitioner who could have compelled an amendment or alteration of a certificate or the production of a duplicate certificate, had he taken proper steps in the lifetime of the registered owner, is to be postponed to that owner's heirs or devisees or to the creditors of his estate, if the owner dies before proceedings are begun.

The law is settled, in the case of unregistered land, that heirs, devisees and general creditors of one, who has granted land by a deed that is not recorded, take subject to the grantee in the unrecorded deed.   *Edwards* v. *Barnes*, 167 Mass. 205.   A creditor who attaches in the owner's lifetime stands in a different position.   See *Smythe* v. *Sprague*, 149 Mass. 310.

The reasoning of these decisions rests in part upon an assumption that the legal title has passed to the grantee. No such assumption can be made under the registration act, for by its express provisions the title has not passed.   Nevertheless, the decisions rest upon other than technical reasoning.   The courts have felt that any other result was unjust. We do not think the Legislature contemplated that there should be any difference between registered and unregistered land in regard to liability for the debts of the owner or in the

rights of his heirs or devisees. This court, in *Dooley* v. *Merrill*, 216 Mass. 500, refused to rule that a husband had any right of curtesy in land which his wife before marriage had bound herself to convey. In *Holmes* v. *Winchester*, 133 Mass. 140, it would not permit assignees in insolvency to take shares in stock which the insolvent husband had long before become bound to convey to his wife.

In principle these decisions are applicable here. Heirs, devisees and general creditors should take only what the deceased rightfully holds at his death. The decision of the Land Court was correct and it is

*Affirmed.*